**UNITED STATES of America,
Plaintiff,**

and

**State of New York, et al.,
Plaintiff–Intervenors,**

v.

**AMERICAN ELECTRIC POWER
SERVICE CORP., et al.,
Defendants.**

**Ohio Citizen Action, et al., Plaintiffs,**

v.

**American Electric Power Service
Corp., et al., Defendants.**

**Nos. C2–99–1182, C2–99–1250.**

United States District Court,
S.D. Ohio,
Eastern Division.

July 16, 2002.

Jon A. Mueller, Leslie B. Bellas, Thomas A. Mariani, Jr. Steven D. Ellis, U.S. Department of Justice, Environmental Enforcement Section, Land & Natural Resources Division, Washington, DC, for Plaintiffs in Case No. C2–99–1182.

Gary D. Greenwald, Shayne & Greenwald, Columbus, OH, J. Jared Snyder, D. Scott Bassinson, New York Attorney General's Office, Albany, NY, Howard Geduldig, Kevin P. Auerbacher, Dante DiParro, John R. Renella, Mary E. Costigan, New Jersey Attorney General, Trenton, NJ, Richard Blumenthal, Kimberly P. Massicotte, Judith A. Merrill, Connecticut Attorney General's Office, Hartford, CT, Dianne H. Sanford, Erick Titrud, Vermont Attorney General's Office, Montpelier, VT, Maureen D. Smith, New Hampshire Attorney General, Concord, NH, Frederick D. Augenstern, Massachusetts Attorney General, Environmental Protection Division, Boston, MA, Van Lear Dorsey, Maryland Attorney General, Department of Environment, Baltimore, MD, Tricia K. Jedele, Mark Sciarrotta, Rhode Island Attorney General, Providence, RI, for Intervening Plaintiffs in Case No. C2–99–1182.

Donald M. Miller, American Electric Popwer Service Corp., Columbus, OH, Alvin J. McKenna, Lisa L. Eschleman, R. Leland Evans, James B. Hadden, Porter, Wright, Morris & Arthur, Columbus, OH, for Defendants in Case Nos. C2–99–1182 and C2–99–1250.

Stephen P. Samuels, Samuels & Norhtrop, Columbus, OH, Nancy S. Marks, Mitchell S. Bernard, Natural Resources Defense Council, Inc., New York City, David Hawkins, Natural Defense Council, Inc., Washington, DC, David Wooley, Clean Air Task Force, Young Sommer, LLC, Albany, NY, Albert Ettinger, Donald Rosenblum, Susan Hedman, Environmental Law & Policy Center of Midwest, Chicago, IL, David T. Buente, Jr., Kathryn Thomson, Timothy Webster, Sidley & Austin, Washington, DC, for Plaintiffs in Case C2–99–1250.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of the Plaintiffs' Motions to Strike certain Affirmative Defenses raised by Defendants (Doc. # 117 in case 99–1182 and Doc. # 102 in case 99–1250). For the reasons that follow, the Plaintiffs' motions are granted in part and denied in part.

### I.

Plaintiffs United States of America, the Intervening Northeastern States and the various Citizen Groups bring this action seeking redress for Defendants' alleged violations of § 304(a)(3) of the Clean Air Act ["CAA"], 42 U.S.C. § 7604(a)(3), in connection with Defendants' operation of nine coal-fired power plants in the States of Ohio, Virginia and West Virginia. In response to Plaintiffs' Amended Complaints, Defendants raise one hundred twenty-three (123) affirmative defenses. The Plaintiffs move to strike seventy-two (72) of the defenses. Plaintiffs categorize the 72 defenses in the following manner: statute of limitations and equitable defenses; constitutional defenses; rulemaking defenses; CAA-specific defenses; and defenses unique to the Plaintiff Citizens and States. The Court will address the merits of Plaintiffs' motions using these categories.

### II.

Plaintiffs' motions are brought pursuant to Fed.R.Civ.P. 12(f), which states:

(f) **Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the

service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

The Sixth Circuit has held that "because of the practical difficulty of deciding cases without a factual record it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Brown & Williamson Tobacco Corp. v. United States,* 201 F.2d 819, 822 (6th Cir. 1953) (internal citations omitted). Thus, such a motion should only be granted "when the pleading to be stricken has no possible relation to the controversy." *Id.*

With respect to affirmative defenses, a motion is strike is proper if the defense is insufficient; that is, if "as a matter of law, the defense cannot succeed under any circumstances." *Ameriwood Industries Int'l Corp. v. Arthur Andersen & Co.,* 961 F.Supp. 1078, 1083 (W.D.Mich.1997). Further, the motion is proper if it aids in eliminating spurious issues before trial, thereby streamlining the litigation. *Id.* With this standard in mind, the Court considers whether certain of Defendants' affirmative defenses should be stricken.

### III.

#### A. Statute of Limitations and Equitable Defenses

##### 1. Statute of Limitations

Plaintiffs move to strike the statute of limitations defense raised by the Defendants under 28 U.S.C. § 2462, which provides:

Except as otherwise provided by Act of Congress, an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued if, within the same period, the offender or the property is found within the United States in order that proper service may be made thereon.

28 U.S.C. § 2462.

Plaintiffs argue that the defense should be stricken because this Court has already ruled that the limitations period does not apply with respect to penalties sought for violations that occurred within five years preceding the filing of these actions, regardless of whether other violations are now time-barred. Defendants contend that Plaintiffs mischaracterize the Court's earlier rulings. Defendants further argue that the Court should not strike the affirmative defense raised under 28 U.S.C. § 2462, but should allow the defense to remain so as to preserve the issue for appeal.

With respect to the statute of limitations defense, the Court stated in pertinent part:

[T]he government apparently concedes the statute's applicability to the claims in this case for civil penalties ... [as it] states that it will not seek civil penalties for days of violation prior to November 3, 1994..... The Court concludes ... that the states' claims are similarly limited by § 2462.... [T]he same cannot be said for the EPA's and intervenor Plaintiffs' claims for injunctive relief, at least insofar as the limitations contained in § 2462 are concerned. That section does not mention injunctions or equitable relief of any kind.... [Further,] if the EPA and/or the Intervenors have claims for injunctive relief under provisions of the CAA, based on Defendants' operation of generating units allegedly modified in violation of the act, § 2462 is not a bar to pursuing such claims, even though the modifications may have been

completed more than five years before suit was filed. *United States of America v. American Electric Power Service Corp.*, 136 F.Supp.2d 808, 811 (S.D.Ohio 2001). Further, this Court held that, whether Plaintiffs' demand for injunctive relief constitutes a penalty thereby making it subject to the limitations period, must await resolution on the merits. *United States of America v. American Electric Power Service Corp.*, 137 F.Supp.2d 1060, 1068 (S.D.Ohio 2001).

■ The Court concludes that the defense based upon § 2462 may remain in this action to the extent set forth above. Indeed, the Defendant recognizes the limited applicability of the defense. (*Memorandum contra* at 49–51). Plaintiffs' motion to strike the defense in its entirety is denied.

### 2. Laches

Plaintiffs move to strike the affirmative defense of laches on the basis that it is insufficient as a matter of law. Plaintiffs point out that laches does not apply to the United States acting in its sovereign capacity to enforce a public right or to assert a public interest. Similarly, the Plaintiffs argue that the defense does not apply to the States or the Citizens because they too are acting to enforce public rights. The Defendants concede as much, but point out that this Court earlier concluded that "the doctrine of laches may prevent injunctive relief ..." *United States v. AEP*, 137 F.Supp.2d at 1067; and the Court held that "[t]he nature and/or extent of appropriate injunctive relief might well change because of the lapse of time." *United States v. AEP*, 136 F.Supp.2d at 814.

■ The Court concludes that the defense of laches may remain in this case regarding injunctive relief; the defense is not, however, available as to claims for civil penalties. Thus, the Plaintiffs' motion to strike the defense in its entirety is denied.

### 3. Equitable Estoppel/Waiver

Plaintiffs move to strike the defense of equitable estoppel on the basis that it does not apply against the United States. The Defendants contend that there is no absolute bar to application of the defense against the Government; further, Defendant contends that the motion to strike is premature until discovery is complete.

In their answer, Defendants assert that Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel. (Sixth Affirmative Defense). Plaintiffs correctly point out that, "equitable estoppel will not lie against the Government as it lies against private litigants." *Office of Personnel Management v. Richmond*, 496 U.S. 414, 419, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990). Nevertheless, the Supreme Court has stopped short of adopting a flat rule absolutely prohibiting estoppel to be raised against the United States. *Id.* Application of the doctrine is limited and the Sixth Circuit has held that "[a]t the very minimum some affirmative misconduct of a government agent is required as a basis for estoppel." *United States v. River Coal Co.*, 748 F.2d 1103, 1108 (6th Cir.1984); *State of Michigan v. City of Allen Park*, 954 F.2d 1201, 1217 (6th Cir.1992).

■ In light of the fact that there is no absolute rule prohibiting application of the doctrine of estoppel against the Government, and given the fact that this case is still in the discovery stage, the Court finds the Plaintiffs' motion to strike the defense in its entirety inappropriate. To this extent, the motion is denied.

Plaintiffs also move to strike the affirmative defense of waiver, which Plaintiffs contend bars the Government's claims in whole or in part. Plaintiffs fail to specify the basis upon which the motion to strike

relies. In the absence of such articulation, the Court finds the motion without merit.

### 4. Unclean Hands

Plaintiffs move to strike the defense of unclean hands on the basis that such a defense cannot be raised against an alleged violation of the Clean Air Act. In particular, Plaintiffs contend that the defense cannot be asserted against the sovereign who acts to protect the public interest, nor can it be asserted against the private citizens whom Congress has authorized to bring suit.

In response, Defendants argue that unclean hands may be relevant to the determination of a remedy and thus, the defense should not be stricken in its entirety. Defendants rely upon *United States v. R.W. Meyer, Inc.*, 932 F.2d 568 (6th Cir. 1991); *AT & T Global Info. Solutions Co. v. Union Tank Car Co.*, No. C2–94–876, 1997 WL 382101 (S.D.Ohio March 31, 1997) in support of this position.

In *R.W. Meyer*, the Plaintiff United States EPA sought to recover costs incurred in conducting an Immediate Removal Action under the Comprehensive Environmental Response, Compensation and Liability Act ["CERCLA"], 42 U.S.C. § 9601, *et seq.*, for cleanup of a hazardous waste site. The defense of unclean hands was not raised in that case but the Sixth Circuit noted that "in a contribution action the plaintiff will almost never have clean hands, since the action is brought as a responsible party, seeking to recoup some of its cleanup costs from other responsible parties. However, the relative culpability of the parties is one of the 'equitable factors' the trial court may consider ...." *United States v. R.W. Meyer, Inc.*, 932 F.2d at 573 n. 6. Similarly, in *AT & T Global Info. Solutions Co.*, Judge Holschuh held that the defense of unclean hands could be considered by the Court in resolving a CERCLA contribution claim.

*AT & T Global Info. Solutions Co. v. Union Tank Car Co.*, 1997 WL 382101 at *3.

The United States argues that the foregoing is irrelevant to a Clean Air Act claim. This Court agrees and holds that the defense of unclean hands may not be used against the United States to prevent it from enforcing its laws to protect the public interest. *See Pan–American Petroleum & Transport Co. v. United States*, 273 U.S. 456, 47 S.Ct. 416, 71 L.Ed. 734 (1927). Similarly, the Court concludes that the defense of unclean hands is inappropriate as applied to public citizens who are authorized to bring suit under the CAA by Congress.

This Court previously held that "[t]he nature and/or extent of appropriate injunctive relief might well change because of the lapse of time." *United States v. AEP*, 136 F.Supp.2d at 814. In light of this holding, the defense of unclean hands, even if only considered in connection with fashioning a remedy, is cumulative. Thus, the Plaintiffs' motion to strike the defense is granted.

### B. Constitutional Defenses

#### 1. Fifth Amendment Takings Clause

In their thirty-sixth affirmative defense, Defendants contend that the Plaintiffs' enforcement action constitutes a taking without just compensation in violation of the Fifth Amendment to the United States Constitution. The Fifth Amendment provides: "[N]or shall private property be taken for public use, without just compensation." U.S. Const. am. V. As the Supreme Court has state, the aim of the clause is to prevent the Government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

The United States moves to strike Defendants' taking defense on the basis that it is not cognizable under the facts at bar. In particular, the Government argues that Defendants' proper remedy, if any, lies in the Federal Court of Claims under the provisions of the Tucker Act, 28 U.S.C. § 1491.[1] The Government further argues that, if cognizable in this Court, consideration of the merits of any takings issue is premature until the merits of Plaintiffs' claims are assessed.

In response to the motion to strike, the Defendants contend that the Government misapprehends the nature of the takings defense. According to Defendants, if the Government prevails on its claims and the Defendants are made to pay monetary penalties and undertake expenditures to install emission control equipment, then the same would constitute an impermissible taking of property without just compensation. Defendants point out that they are not seeking compensation for property already "taken" in the traditional Fifth Amendment sense of the phrase. According to Defendants, the defense should proceed in accordance with the United States Supreme Court's decision in *Eastern Enterprises v. Apfel*, 524 U.S. 498, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998). Plaintiffs contend that this case is inapposite to the situation at bar.

In *Eastern Enterprises*, the Supreme Court considered the constitutionality of the Coal Industry Retriree Health Benefit Act of 1992 [the "Coal Act"], 26 U.S.C. §§ 9701–9722, as applied to Eastern Enterprises, a Massachusetts business which engaged in mining operations until 1965. The Coal Act was passed by Congress in 1992 in order to aid in the funding of health care benefits for retirees of the coal industry and their dependents. Under the Act, Eastern was assigned the obligation of premium payments for over 1,000 retired miners who had worked for the company before 1966; Eastern's premium during a twelve month period exceeded $5 million. *Eastern Enterprises*, 524 U.S. at 517, 118 S.Ct. 2131. Eastern challenged the Act as a violation of substantive due process and an unconstitutional taking.

With respect to the takings challenge, the Supreme Court first considered the applicability of the Tucker Act to Eastern's claim. The Court found the Act inapplicable because Eastern did not seek compensation from the Government; rather, Eastern sought a declaration that the Act was unconstitutional and an injunction preventing enforcement of the Act as to Eastern. The Court held that the situation in *Eastern Enterprises* was unique because although "regardless of the nature of the relief sought, the availability of a Tucker Act remedy renders premature any takings claim in federal court ... in a case such as this one, it cannot be said that monetary relief against the Government is an available remedy." *Id.* at 521, 118 S.Ct. 2131 (internal citations omitted). The Court reasoned:

> The payments mandated by the Coal Act, although calculated by a Government agency, are paid to the privately operated Combined Fund. Congress could not have contemplated that the Treasury would compensate coal operators for their liability under the Act, for "[e]very dollar paid pursuant to a stat-

---

1. The statute provides exclusive jurisdiction in the Federal Court of Claims for any claim against the United States exceeding $10,000 that is
> founded either upon the Constitution, or any Act of Congress or any regulation of an

executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages not sounding in tort.

28 U.S.C. § 1491(a)(1).

ute would be presumed to generate a dollar of Tucker Act compensation." *Id.*, quoting *In re Chateaugay Corp.*, 53 F.3d 478, 493 (2nd Cir.), cert. denied *sub nom. LTV Steel Co. v. Shalala,* 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995). Thus, the Supreme Court concluded that the presumption of Tucker Act availability must be reversed when the challenged statute requires a direct transfer of funds mandated by the Government.

■ The Court concludes that the situation at bar is not analogous to the matters addressed in *Eastern Enterprises.* As the Government points out, Defendants in this case do not make an equitable challenge to the CAA. Further, the statute at issue does not require direct payments to the Government as did that addressed in *Eastern Enterprises.* Rather, civil penalties may be assessed in the event that the Defendants are found to have violated the CAA. Further, the Court observes that, unlike the circumstances in *Eastern Enterprises,* any civil penalties assessed in this case must be based upon violations which have occurred since the passage of the CAA. In contrast, in *Eastern Enterprises,* payment was required for a time period some thirty years before the Coal Act was enacted. In the Court's view, these distinctions lead to the conclusion that reversal of the presumption of relief under the Tucker Act is not warranted in this case. Thus, the affirmative defense premised upon the Fifth Amendment takings clause is properly stricken.

### 2. Fifth Amendment Due Process/Equal Protection

In their Eighteenth Affirmative Defense, Defendants contend that Plaintiffs have "impermissibly and discriminatorily singled out companies located in [the Mid-west and Southern United States] for its CAA enforcement activities" in violation of the Fifth Amendment to the Constitution. Defendants further contend that such conduct is "arbitrary, capricious or otherwise not in accordance with law. 5 U.S.C. § 706; 42 U.S.C. § 7607(d)(9)." (Aff. Defense Eighteen). Plaintiffs move to strike this defense on the basis that Defendants cannot establish the requisite elements of selective prosecution.

■ The Fifth Amendment provides that no person shall be "deprived of life, liberty or property, without due process of law." U.S. Const. amend. V. The Due Process clause of the Fifth Amendment encompasses an equal protection guarantee, which guarantee protects against selective prosecution.[2] *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 98 L.Ed. 884 (1954). A Defendant's assertion of selective prosecution requires a showing that the federal prosecutorial policy at issue had a discriminatory effect and that it was motivated by a discriminatory purpose. *United States v. Armstrong,* 517 U.S. 456, 465, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). "[T]he presumption of regularity supports ... prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." *Id.* at 464, 116 S.Ct. 1480 (citation omitted). Thus, the standard for demonstrating selective prosecution "is a demanding one." *Id.* Indeed, United States Attorneys are vested with broad discretion to enforce this nation's laws as the Executive's delegates to aid the President in discharging his constitutional duty to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3; *Id.*

---

**2.** As used throughout this section, the term "selective prosecution" includes civil enforcement actions, which are subject to the same challenges for selective enforcement. *See United States v. The Irish People, Inc.,* 684 F.2d 928 (D.C.Cir.1982).

■ In order to satisfy the selective prosecution standard and overcome the presumption of regularity, the claimant must present clear evidence that he or she was singled out as a member of an identifiable group for prosecution, even though others in the group who were similarly situated were not selected for prosecution. Second, the claimant must show that the prosecution was initiated with a discriminatory purpose. Third, the claimant must show that the prosecution had a discriminatory effect on the group to which the claimant belongs. *Stemler v. City of Florence,* 126 F.3d 856, 873 (6th Cir.1997).

■ In order to obtain discovery in support of a claim of selective prosecution, the claimant must make "a credible showing of different treatment of similarly situated persons...." *United States v. Armstrong,* 517 U.S. at 470, 116 S.Ct. 1480. This threshold requirement "adequately balances the Government's interest in vigorous prosecution and the defendant's interest in avoiding selective prosecution." *Id.* If the claimant meets the threshold showing and discovery is ordered, then "the Government must assemble from its own files documents which might corroborate or refute the defendant's claim." *Id.* at 468, 116 S.Ct. 1480. This is indeed a costly undertaking as it "will divert prosecutors' resources and may disclose the Government's prosecutorial strategy. The justifications for a rigorous standard for the elements of a selective prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." *Id.*

Defendants in this case represent that they "believe that discovery will demonstrate that Plaintiffs intentionally selected specific companies in specific regions of the country for this enforcement action, and excluded other similarly situated entities without the constitutionally required rational basis for this discriminatory treatment." (*Defendants' Memorandum contra* at 29). In response, the Government states that power plants in the Northeastern States, to wit: Niagara Mohawk, New York Electric & Gas Corp., NRG Corp. and Rochester Gas & Electric Corp., are also the subject of separate CAA enforcement actions. (*Plaintiffs' Reply* at 21). Further, the Government contends that the decision of the Justice Department to focus enforcement efforts on the largest plants which create the most pollution is wholly rational. In addition, "[a]s a matter of necessity and capability, the government cannot prosecute all offenders simultaneously." (*Id.*).

■ While the Defendants have a heavy burden in order to successfully maintain the defense of selective prosecution, the Court cannot conclude at this juncture that there is no basis under which the defense could succeed. Defendants allege that they were selected for CAA enforcement violations while other plants were not and that discovery will support their assertion that this selection was discriminatorily motivated. The Defendants shall have **thirty (30) days** from the date of this Order to demonstrate to the Court, by way of a memorandum filing, the basis for their argument that they have satisfied the threshold showing outlined in *Armstrong,* that would justify discovery on the selective prosecution defense. The Government shall respond to the Defendants' filing within the time permitted by rule. Either party may request a hearing and the Court will schedule the matter to be heard forthwith. The motion to strike the defense of selective prosecution is denied at this stage.

### 3. Eighth Amendment

The Defendants contend that the penalties the Government seeks for the alleged CAA violations amount to an excessive

fine for purposes of the Eighth Amendment to the Constitution. The Government moves to strike this defense on the basis that the penalties sought are based upon limits prescribed by Congress and cannot be unconstitutionally excessive. Further, the Government points out that this Court is vested with authority under the statute to consider various factors in awarding a penalty for a CAA violation. *See* 42 U.S.C. § 7413(e)(1). Finally, the Government argues that since no penalty has been assessed at this juncture in the case, the merits of the defense are not ripe for resolution.

In response, the Defendants argue that, although a fine may be within the statutory maximum, it may nevertheless be excessive for purposes of the Eighth Amendment. Defendants also contend that, whether a fine is excessive is a factual question that cannot be decided as a matter of law before a penalty is actually assessed. In support of this assertion, Defendants cite *United States v. Valley Steel Prods. Co.*, 765 F.Supp. 752 (C.I.T. 1991). The Government acknowledges this authority, but maintains that the Eighth Amendment defense should be stricken to the extent Defendants claim that the penalties sought are *per se* unconstitutional.

In the Court's view, Defendants are not asserting that the civil penalty provisions of the CAA are *per se* unconstitutional. Rather, Defendants contend that they should be able to challenge, at some later time, whether any penalties which may be imposed are excessive for purposes of the Eighth Amendment. As both parties recognize, such a determination must await resolution of the merits of Plaintiffs' claims. Thus, the Court concludes that the Government's motion to strike the Eighth Amendment defense must be denied.

### 4. Tenth Amendment

In their Thirtieth Affirmative Defense, Defendants contend that the Plaintiffs' claims are barred in whole or in part, because the claims allegedly "usurp state authority to provide and regulate an essential public service in violation of the Tenth Amendment [to] the United States Constitution." (Thirtieth Aff. Defense). Defendants further contend that the Plaintiffs' claims "render the State of Indiana, the State of Ohio, the Commonwealth of Virginia and the State of West Virginia instruments of unlawful federal policy in violation of the Tenth Amendment and Article IV, § 4 of the United States Constitution." (Thirty–First Aff. Defense).

Plaintiffs move to strike these defenses on the basis that Congress has the authority to regulate the electrical generating industry. Plaintiffs also argue that the CAA does not violate the Tenth Amendment because the Act does not regulate a matter that is an indisputable attribute of state sovereignty. Rather, Plaintiffs contend that air pollution is a national problem and that Congress is vested with authority under the Commerce Clause to regulate the same. Plaintiffs rely on the Supreme Court's decision in *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985) and the Sixth Circuit's decision in *Dressman v. Costle*, 759 F.2d 548 (6th Cir.1985) in support of this position.

The Tenth Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. am. X. In *National League of Cities v. Usery*, 426 U.S. 833, 842, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), the Supreme Court observed that "our federal system of government imposes definite limits

upon the authority of Congress to regulate the activities of States as States by means of the commerce power."[3] In *Garcia v. San Antonio Metro. Trans. Auth., supra,* the Supreme Court reiterated that "it long has been settled that Congress' authority under the Commerce Clause extends to intrastate economic activities that affect interstate commerce." *Garcia,* 469 U.S. at 537, 105 S.Ct. 1005 (citations omitted). Nonetheless, in overruling the decision in *National League of Cities v. Usery,* the Court rejected the rule that state immunity from federal regulation turns on a judicial consideration of the "traditional," "integral" or "necessary" nature of a particular government function. *Id.* at 546–47, 105 S.Ct. 1005. Rather, the role of the states in the federal system is "guaranteed by the constitutional structure of the federal government itself rather than by external limits imposed on the Commerce power via the tenth amendment." *Dressman v. Costle,* 759 F.2d 548, 557 (6th Cir.1985), citing *Garcia,* 469 U.S. at 546–54, 105 S.Ct. 1005.

As the Government points out, in *Dressman,* the Sixth Circuit, considering a challenge to the EPA's rejection of the State of Kentucky's implementation plan under the CAA, observed that "it is undisputed that air pollution is a severe national problem [which] Congress has exercised its power under the Commerce Clause to regulate directly . . . ." *Id.* at 555. The Court concluded that the EPA's decision to impose a construction moratorium on the state for its failure to comply with the CAA did not violate the Tenth Amendment.

The Defendants in this case maintain that if the Government prevails, the states in which the coal-burning power facilities are located will be impermissibly coerced into taking regulatory action in violation of the Tenth Amendment. In particular, Defendants contend that if the states are made to formulate State Implementation Plans under the CAA, that the same would be unconstitutional. The Court disagrees. As the Sixth Circuit has observed, Congress is vested with authority to regulate air pollution via its Commerce Clause power. Further, as the Government points out, the federal/state relationship established under the CAA is a form of "cooperative federalism" that the Supreme Court has upheld in the face of Tenth Amendment challenges.

■■■■ Clearly, Congress cannot compel states to enact or enforce a federal regulatory program. *New York v. United States,* 505 U.S. 144, 161, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992); *Printz v. United States,* 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997). If the Government is successful in this case, however, the four states in which the coal-burning power facilities are located would not be compelled by the federal government to enforce a federal regulatory scheme through various state agencies, in violation of the Tenth Amendment. Under the CAA, the federal government offers the states the choice of regulating an activity—air pollution—which is indisputably a national problem. If a state fails to comply with the federal requirements, the EPA may promulgate and enforce its own federal implementation plan. *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.,* 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); *United States v. Ohio Dept. of Highway Safety,* 635 F.2d 1195 (6th Cir.1980). In light of this scheme of cooperative federalism, the Court finds no Tenth Amendment

---

**3.** The Commerce Clause states that "Congress shall have power . . . To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. Art. I, § 8, cl. 3.

issue. Thus, the Defendants' Tenth Amendment defense is stricken.

### 5. Separation of Powers/Nondelegation

Defendants assert that the Government's claims and the States and Intervenor's claims are barred in whole or in part because "Plaintiff's construction of the CAA and rules promulgated thereunder in support of its claims effects an unconstitutional delegation of legislative power." (Twentieth Aff. Defense; Twenty-first Aff. Defense).

The Government moves to strike this defense on the basis that the nondelegation doctrine does not apply to this case. The Government further asserts that, if the doctrine does apply, the EPA's interpretation of the CAA satisfies the same.

Article I, § 1 of the United States Constitution provides that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States." U.S. Const. Art. I, § 1. It is from this language that the Supreme Court has derived the nondelegation doctrine; that is, that Congress may not constitutionally delegate its legislative power to another branch of Government. "The nondelegation doctrine is rooted in the principle of separation of powers that underlies our tripartite system of Government." *Mistretta v. United States*, 488 U.S. 361, 371, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The nondelegation doctrine does not, however, prevent Congress "from seeking assistance, within proper limits, from its coordinate Branches." *Touby v. United States*, 500 U.S. 160, 165, 111 S.Ct. 1752, 114 L.Ed.2d 219 (1991), citing *Mistretta*, at 372, 109 S.Ct. 647. "So long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to conform, such legislative action is not a forbidden delegation of legislative power.'" *Mistretta*, 488 U.S. at 372, 109 S.Ct. 647, citing *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409, 48 S.Ct. 348, 72 L.Ed. 624 (1928). Therefore, Congress may delegate under broad general directives so long as it "clearly delineates [the] general policy, the public agency which is to apply it, and the boundaries of this delegated authority." *American Power & Light Co. v. SEC*, 329 U.S. 90, 105, 67 S.Ct. 133, 91 L.Ed. 103 (1946).

As the Government correctly points out, there have been only two instances in which the Supreme Court has held that a statute impermissibly delegated legislative authority. *See Panama Refining Co. v. Ryan*, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935) and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570 (1935). Further, in the context of a challenge to the CAA under the nondelegation doctrine, the Supreme Court recently held that "[i]n a delegation challenge, the constitutional question is whether the statute has delegated legislative power to an agency." *Whitman v. American Trucking Assoc.*, 531 U.S. 457, 472, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). In this case, however, Defendants appear to simply challenge the construction of the statute by the EPA, not whether the statute has unlawfully delegated power to the agency. Thus, the Government's argument that the defense is misplaced is well-taken.

The Defendants do, however, argue in their memorandum *contra*, that the "new interpretation and application of relevant provisions of the CAA and federal regulations that Plaintiffs attempt to impose retroactively through this litigation constitutes an *ultra vires* action in excess of the authority delegated to USEPA by Congress." (*Memorandum contra* at 30). In response, the Government contends that

whether or not the interpretation of the statute given in the federal regulations is *ultra vires* is of no moment because the Government's claim is for violation of the statute itself—not the interpretation of the statute by the EPA. In addition, the Government argues that if the defense is available, Defendants cannot show that the New Source Review regulations as interpreted and applied by the EPA fall outside the delegation of authority by Congress to the EPA.

In support of the motion to strike, the Government relies upon the decision of the Court of Appeals for the D.C. Circuit in *Alabama Power v. Costle,* 636 F.2d 323 (D.C.Cir.1980). In that case, the Court considered challenges to the validity of final regulations promulgated by the EPA with regard to the prevention of significant deterioration ["PSD"] of air quality for certain areas of the country under the CAA. Among the issues addressed was the EPA's definition of "modification" of stationary sources for purposes of the PSD. The Court held that the EPA "does have discretion, in administering the statute's 'modification' provision, to exempt from PSD review some emission increases on grounds of de minimus or administrative necessity.... [T]he clear language of the statute unavoidably imposes these costs [for modifications] except for de minimus increases." *Id.* at 400.

The Government argues that, based upon the foregoing, the EPA's interpretation of "routine maintenance" provisions of the CAA exempt "only truly minor, routine, *de minimus* activity, rather than multimillion dollar projects to replace extremely large power plant components that are at issue in this case." (*Motion to Strike* at 30). The Government argues that the nondelegation doctrine would, therefore support the EPA's position. According to the Government, it is the Defendants' interpretation of "routine mainte-

nance" that runs afoul of the ability of Congress to delegate to the EPA.

 Nonetheless, the Court finds it premature at this juncture to dismiss the Defendants' *ultra vires* defense. The defense raises challenges as to the manner in which the EPA has applied and interpreted the routine maintenance provision of the CAA, rather than the definition of the provision itself, as contained in the statute. The Court cannot conclude at this point in the action that the defense has no possible relation to the controversy at issue for purposes of Rule 12(f). Consequently, the Government's motion to strike the *ultra vires* defense is denied.

## 6. Commerce Clause

In their Thirty–Third Affirmative Defense, the Defendants contend that Plaintiffs' "attempts in this enforcement action to impose regulatory costs and burdens for air emission controls at the plants do not serve a legitimate federal interest under the Commerce Clause of Article I, Section 8 of the United States Constitution." (Thirty–Third Aff. Defense). Defendants raise the same defense to the Intervenor Plaintiffs' complaint. (Thirty–Eighth Aff. Defense).

 The Government moves to strike this defense for vagueness and because, according to the Government, it is beyond dispute that the instant action is in conformity with the Commerce Clause, at least as far as the Federal Government's action is concerned. As discussed *supra,* in connection with Defendants' Tenth Amendment defense, Congress clearly has the authority to regulate the national problem of air pollution via its Commerce Clause power. The Defendants apparently concede this point as their memorandum *contra* does not address the Commerce Clause defense. Consequently, the Government's motion to strike the defense is granted.

The Defendants contend, however, that the defense should not be stricken against the Intervening Northeastern states. Defendants argue that in filing suits only against power companies located in Ohio, Indiana, West Virginia and Virginia, but not against plants located in their own states, the intervening states have acted in a discriminatory manner and have impermissibly burdened interstate commerce. According to the Defendants, the Commerce Clause prohibits states from taking action that benefits in-state economic interests by burdening out-of-state competitors. In response, the Government argues that since the states are expressly authorized by Congress to bring the instant enforcement action, the defense should be stricken.

■■■ As the Defendants point out, the Commerce Clause has long been interpreted to have a "negative" aspect which denies states the power to discriminate against or burden interstate commerce. *See Oregon Waste Sys. v. Dept. of Environmental Quality*, 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994). Nonetheless, the Government correctly observes that "[w]here state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce." *White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204, 213, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983). Since Congress has specifically authorized the

Northeastern States and the Intervening Citizen Groups to commence suit for alleged CAA violations, 42 U.S.C. §§ 7604(a) and 7602(e)[4], the Defendants' Commerce Clause defense is without merit. The Government's motion to strike is granted.

### C. Rulemaking Defenses

#### 1. Purported Unlawful Agency Action

The Plaintiffs move to strike several of the Defendants' Affirmative Defenses to the extent that the defenses assert that the Plaintiffs' interpretation of the CAA regulations is in violation of the public notice and comment requirements of the Administrative Procedure Act ["APA"], 5 U.S.C. § 551, *et seq.* In particular, the Government takes issue with the Seventh, Ninth, Tenth, Eleventh and Twenty–Sixth Affirmative Defenses raised to the Government's Complaint. In these defenses, the Defendants assert that the Government's interpretations of the PSD, NNSR and NSPS requirements (*i.e.*, the "routine maintenance, repair or replacement" requirements) are markedly different from historical interpretations of the same terms in the CAA. According to the Defendants, the new interpretations should be have been subject to public notice and comment.

The Government argues that this Court is without jurisdiction to entertain Defendants' challenges in light of 42 U.S.C. § 7607(b)[5], which vests exclusive jurisdic-

---

4. 42 U.S.C. § 7604(a) provides, part:
[A]ny person may commence a civil action on his own behalf—
(1) against any person ... who is alleged to have violated ... or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation ...
(3) against any person who proposes to construct or constructs any new or modified major emitting facility without a permit

required under part C of subchapter I of this chapter ... or part D of subchapter I of this chapter ... or who is alleged to have violated ... or to be in violation of any condition of such permit.
In addition, 42 U.S.C. § 7602(e) provides that "[w]hen used in this chapter ... [t]he term 'person' includes ... State ...."

5. b) Judicial review
(1) A petition for review of action of the Administrator in promulgating any national

tion to hear challenges to EPA regulations in the Court of Appeals for the District of Columbia Circuit.

According to the Government, Defendants' assertions are identical to those presented by defendant in *United States v. Ford Motor Co.*, 736 F.Supp. 1539 (W.D.Mo.1990). In that case, the EPA sued the defendant automobile manufacturer for allegedly violating a state implementation plan promulgated under the CAA. The Defendant presented a counterclaim challenging the Government's suit as part of a "national litigation strategy"

adopted by the EPA that had the effect of a regulation but was not made subject to the Administrative Procedures Act. In particular, the Defendant argued that the EPA, as a matter of internal policy, commenced enforcement actions while ignoring valid regulations. The district court concluded that, to the extent the Defendant's argument was presented in the context of a counterclaim, the court was without jurisdiction to entertain the same because the allegations, taken as true, presented an attack on a final agency action, cognizable only in the Court of Appeals. The court observed, however, that it was permissible

primary or secondary ambient air quality standard, any emission standard or requirement under section 7412 of this title, any standard of performance or requirement under section 7411 of this title, any standard under section 7521 of this title (other than a standard required to be prescribed under section 7521(b)(1) of this title), any determination under section 7521(b)(5) of this title, any control or prohibition under section 7545 of this title, any standard under section 7571 of this title, any rule issued under section 7413, 7419, or under section 7420 of this title, or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia. A petition for review of the Administrator's action in approving or promulgating any implementation plan under section 7410 of this title or section 7411(d) of this title, any order under section 7411(j) of this title, under section 7412 of this title, ... under section 7419 of this title, or under section 7420 of this title, or his action under section 1857c–10(c)(2)(A), (B), or (C) of this title (as in effect before August 7, 1977) or under regulations thereunder, or revising regulations for enhanced monitoring and compliance certification programs under section 7414(a)(3) of this title, or any other final action of the Administrator under this chapter (including any denial or disapproval by the Administrator under subchapter I of this chapter) which is locally or regionally applicable may be filed only in the United States Court of Appeals for

the appropriate circuit. Notwithstanding the preceding sentence a petition for review of any action referred to in such sentence may be filed only in the United States Court of Appeals for the District of Columbia if such action is based on a determination of nationwide scope or effect and if in taking such action the Administrator finds and publishes that such action is based on such a determination. Any petition for review under this subsection shall be filed within sixty days from the date notice of such promulgation, approval, or action appears in the Federal Register, except that if such petition is based solely on grounds arising after such sixtieth day, then any petition for review under this subsection shall be filed within sixty days after such grounds arise. The filing of a petition for reconsideration by the Administrator of any otherwise final rule or action shall not affect the finality of such rule or action for purposes of judicial review nor extend the time within which a petition for judicial review of such rule or action under this section may be filed, and shall not postpone the effectiveness of such rule or action.

(2) Action of the Administrator with respect to which review could have been obtained under paragraph (1) shall not be subject to judicial review in civil or criminal proceedings for enforcement. Where a final decision by the Administrator defers performance of any nondiscretionary statutory action to a later time, any person may challenge the deferral pursuant to paragraph (1).

42 U.S.C. § 7607(b).

for the Defendant to present its arguments as a defense to the enforcement action.[6] *Id.* at 1552.

Defendants in this case point out that Magistrate Judge Kemp has permitted discovery on the issue of Plaintiffs' interpretations of the various New Source Review regulations and whether those interpretations conflict with the prior applications of the regulations. Further, Defendants argue that the Plaintiffs' interpretation of the regulations is not subject to § 7607 because it is not a "final action of the Administrator" for purposes of the statute. Defendants rely on *United States v. Zimmer Paper Prods., Inc.*, 733 F.Supp. 1265 (S.D.Ind.1989) in support of this position. In that case, the United States sought civil penalties and injunctive relief for the Defendant's alleged violation of the CAA. The Defendant brought a counterclaim challenging the validity of an EPA internal memorandum allegedly used to interpret the regulations the Defendant was accused of violating. The district court observed that it was undisputed that the memorandum was not a nationally applicable regulation officially promulgated by the Administrator nor was it published in the Federal Register. Accordingly, the court held that Defendant's challenge to the memorandum was not a "final action of the Administrator" under § 7607(b). *Id.* at 1269–70.

Defendants cite *Donner Hanna Coke Corp. v. Costle*, 464 F.Supp. 1295 (W.D.N.Y.1979), for a similar proposition. In that case, the court held that § 7607(b) did not preclude it from reviewing the EPA's enforcement of an order which had not been subject to the rulemaking process under the APA.

▮ In this case, although Defendants assert that the Government's interpreta-

tion of the various regulations should have been subject to notice and comment procedures under the APA, it is undisputed that the same has not occurred. Moreover, Defendant's argument is unlike those presented in *Zimmer and Costle* in which the defendants challenged specific regulatory orders or promulgated interpretations of regulatory orders. In contrast, here the Defendants argue that the instant action itself amounts to a regulation, or a course of regulation when considered with other lawsuits, which should be subject to notice and comment. This Court rejects Defendants' characterization of the instant action as a "rule" that should be made subject to notice and comment under the APA and ultimately reviewed pursuant to § 7607. Furthermore, under 42 U.S.C. § 7607(b), "any ... nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed only in the United States Court of Appeals for the District of Columbia." Thus, this Court would be without jurisdiction even if it were to conclude that Defendant's argument is correct.

The Court concludes, however, that the Defendants are entitled to challenge Government's interpretation of the rules in this enforcement action in defending Plaintiffs' claims. Thus, the Government's motion to strike is granted in part and denied in part on the rulemaking issue.

## 2. Purported Violation of 5 U.S.C. § 801, *et seq.*

The Government moves to strike the Defendants' affirmative defense which states that this "enforcement action and the claims asserted in the First Amended Complaint are in violation of 5 U.S.C. § 801, *et seq.*, Congressional Review of Agency Action." (Twenty–Seventh Aff. Defense). According to the Government,

---

**6.** The Government fails to point out this distinction in its Motion to Strike.

this enforcement action cannot be characterized as "rulemaking" for purposes of the statute. Further, the Government argues that the defense is insufficient as a matter of law because even if the Government failed to comply with the statute, the statute specifically bars judicial review for the alleged violation.

5 U.S.C. § 801(a)(1)(A) provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—(i) a copy of the rule; (ii) a concise general statement relating to the rule, including whether it is a major rule; and (iii) the proposed effective date of the rule." Section 805 provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805.

The Defendants take issue with the stated bar to judicial review. According to Defendants, the statute does not preclude a court from considering whether a rule is in effect. In support of this position, Defendants point to the legislative history of statute. (*See Memorandum contra* at 14 citing 142 Cong. Rec. S3686 (April 18, 1996)). Defendants do not, however, articulate in what manner this action constitutes "rulemaking" for purposes of the statute.

In support of its position, the Government relies upon *Texas Sav. & Community Bankers Assoc. v. Federal Housing Finance Bd.*, No. 97CA421, 1998 WL 842181 (W.D.Tex. June 25, 1998). In that case, three thrift institutions and two of their trade associations sued the Federal Housing Finance Board challenging one of the Defendant's policies regarding the home mortgage lending industry. Plaintiffs argued that the policy violated, *inter alia*, 5 U.S.C. §§ 801, *et seq.* The district court declined to consider the argument on the basis that it was without jurisdiction. The court held that the language of the judicial bar in § 805 "could not be plainer."

■■■ This Court agrees that the language of § 805 is plain. Indeed, the starting point of the Court's analysis is with the statute itself. "If the intent of Congress is clear, that is the end of the matter." *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993) (quotation omitted). Departure from the plain language of a statute is appropriate only in "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters ... or when the statutory language is ambiguous." *Kelley v. E.I DuPont de Nemours & Co.*, 17 F.3d 836, 842 (6th Cir.1994) (citation and internal quotation omitted). In all other instances, the plain meaning of the statute controls. *Id.*

Furthermore, this Court is not convinced that the instant enforcement action amounts to rulemaking which would be covered by 5 U.S.C. §§ 801, *et seq.*, in the first instance. For this reason, as well as the plain language of the jurisdictional bar, the Government's motion to strike is granted.

## D. Notice of Violations

In their Twenty–Ninth Affirmative Defense, the Defendants assert that the Plaintiffs' claims are barred in whole or in part because "Plaintiff failed to issue adequate and reasonably intelligible Notices of Violation thirty days in advance of bringing this suit as required by 42 U.S.C. § 7413." (Aff. Defense Twenty–Nine). The Government moves to strike this defense on the basis that it is insufficient as a matter of law given the fact that Defendants admit that they have received the requisite notices under the CAA.

With respect to notice, the statute provides:

Whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of an applicable implementation plan or permit, the Administrator shall notify the person and the State in which the plan applies of such finding. At any time after the expiration of 30 days following the date on which such notice of a violation is issued, the Administrator may, without regard to the period of violation (subject to section 2462 of Title 28)—

(A) issue an order requiring such person to comply with the requirements or prohibitions of such plan or permit,

(B) issue an administrative penalty order in accordance with subsection (d) of this section, or

(C) bring a civil action in accordance with subsection (b) of this section.

42 U.S.C. § 7413(a)(1).

In their Answer, the Defendants state that on November 3, 22 and 30, 1999, the Plaintiff served certain of the AEP Companies with Notices of Violation under the CAA. (*Answer* at ¶¶ 9–11). The Defendants deny all other allegations with respect to the NOVs. (*Id.*). Further, the Defendants "admit that 30 days had elapsed between the issuance of the NOVs at the time Plaintiffs' First Amended Complaint was filed, but deny that the required 30–day period had elapsed at the time Plaintiffs' original complaint was filed." (*Id.* at ¶ 12).

The Defendants contend that their Answer makes clear that the defense premised upon failure to comply with § 7413(a)(1) should proceed both with respect to the issue of timeliness of notices and legal sufficiency of the same. The Government characterizes the defense of legal sufficiency as "groundless." (*Reply Memorandum* at 43).

■ The Court concludes that it is inappropriate to strike the Defendants' Twenty–Ninth Affirmative Defense. Contrary to the Government's argument, the Court finds that the defense clearly reserves the right to challenge the legal sufficiency of the notices sent. Further, the legal sufficiency issue is a matter that the Court cannot resolve at this juncture.

As to the timeliness of the notices sent, the Defendants contend that at least one of the notices was not timely. Defendants refer to the November 3, 1999 notice alleging CAA violations at the Tanners Creek, Muskingum River, Cardinal, Conesville, Sporn and Mitchell plants. (*Memorandum contra* at 17 n. 24). As Defendants point out, their Answer clearly denies that the required 30 day period had elapsed from the time the notice was sent and the time the original complaint was filed. Thus, the Court denies the Government's motion to strike the affirmative defense of failure to comply with the notice regulations. At this juncture, the Court cannot resolve the effect of any alleged failure to comply with the notice requirements.

### E. Intervening Citizen Group/Northeastern States Defenses

The Government moves to strike several of the Affirmative Defenses which apply to the claims made by the intervening citizen groups and northeastern states. The Court will consider each, in turn.

#### 1. Claims other than those asserted by the United States

The Government moves to strike the Defendants' Affirmative Defenses to the extent they challenge the states' and intervening citizen groups' ability to raise claims different from those brought by the United States. The Government contends that the claims of these entities share common factual and legal issues with the

claims of the United States and that judicial economy is promoted by entertaining all claims in one action.

■■■ The Court concludes that it is inappropriate to strike the Affirmative Defenses which challenge the intervening states' ability to pursue claims different from those raised by the United States. It is unclear at this juncture what claims the Defendants challenge the states' ability to pursue. Thus, it is premature at this juncture to summarily strike any defense to the extent that it presents the issue of ability of the states to pursue their claims. The Court will consider the issue on the merits as this case proceeds. The Government's motion to strike is denied.

## 2. State Regulators' Activities

The Government moves to strike portions of five defenses to the extent that they are based on the action or inaction of the states in which the plants at issue in this case are located. In particular, Defendants contend that Plaintiffs' claims are barred in whole or in part because the plants obtained valid operating permits, registrations, orders and other final actions from the particular state permitting authorities. (Twenty–Fifth Aff. Defense to States' Amended Complaint). Defendants also contend that this action violates the Tenth Amendment (Thirty–First Aff. Defense) and Art. IV, § 4 of the United States Constitution (Thirty–Third Aff. Defense); that it impermissibly usurps the states' authority to regulate under 42 U.S.C. § 7410 (Fourth and Thirty–Second Aff. Defense). Defendants raise similar defenses to the Citizens' Amended Complaint (Aff. Defenses Four, Twenty–Eight, Thirty–Three, Thirty–Four, Thirty–Five).

In support of their motion, the Government cites to 42 U.S.C. § 7604(b)(1)(B), which provides a defense to a citizen suit when an enforcement action is filed by the host state. The Government does not contend that this statute applies to the instant case. Rather, the Government uses the statute to inferentially argue that, there is no defense to a citizen action based on a host state's failure to prosecute. In support of this position, the Government cites cases arising under the Clean Water Act in which courts have held that citizen suits are barred only by state enforcement action, not by agency action or inaction that falls short of enforcement action. *See United States EPA v. Green Forest,* 921 F.2d 1394, 1405 (8th Cir.1990); *Menzel v. County Utilities Corp.,* 712 F.2d 91, 94 (4th Cir.1983).

In response, the Defendants argue that the Plaintiffs misconstrue the nature of their defenses. Defendants represent that they are not asserting as a bar the decision of host states foregoing prosecution. Rather, the Defendants contend that the manner in which the host states have regulated the plants is central to determining the Defendants' alleged liability under the CAA. Defendants cite to 42 U.S.C. § 7410(a)(3), which authorizes states to develop, administer and assume the primary responsibility for implementing the CAA within its borders.

■■■ The Court concludes that it is inappropriate to strike the Affirmative Defenses to the extent they raise issues related to the inaction or action of the host states. Contrary to the Government's argument, the Defendants do not contend that there is a jurisdictional bar to the instant suit on the basis of state action or inaction. Rather, in the Court's view, evidence of the host states' action or inaction is relevant to the alleged CAA violations, but not necessarily determinative of the issues to be considered. The Court will consider the merits of a defense based on state action or inaction as this case proceeds. The Government's motion to strike is denied.

## IV.

In light of the foregoing, the Plaintiffs' Motions to Strike certain Affirmative Defenses raised by Defendants (**Doc. # 117 in case 99–1182** and **Doc. # 102 in case 99–1250**) are **GRANTED in part and DENIED in part,** consistent with the above.

**IT IS SO ORDERED.**