UNITED STATES of America,
Plaintiff,

and

State of New York, et al.,
Plaintiff–Intervenors

v.

AMERICAN ELECTRIC POWER
SERVICE CORP., et al.,
Defendants.

Ohio Citizens Action, et al., Plaintiffs

v.

American Electric Power Service
Corp., et al., Defendants.

No. C2–99–1182.

United States District Court,
S.D. Ohio,
Eastern Division.

March 28, 2003.

Steven D. Ellis, Leslie B. Bellas, U.S. Department of Justice, Washington, DC, Richard Blumenthal, Kimberly P. Massicotte, Judith A. Merrill, Connecticut Attorney General's Office, Hartford, CT, J. Jared Snyder, D. Scott Bassinson, New York Attorney General's Office, Albany, NY, for Plaintiff (99–CV–1182).

Tricia K. Jedele, Mark Sciarrotta, Rhode Island Attorney General, Providence, RI, Erick Titrud, Kevin O. Leske, Vermont Attorney General, Montpelier, VT, Maureen D. Smith, New Hampshire Attorney General, Concord, NH, J. Van Lear Dorsey, Maryland Attorney General, Department of the Environment, Baltimore, MD, Amy B. Mills, Manchester, NH, Dianne H. Sanford, Vermont Attorney General, Montpelier, VT, James R. Baum, Rhode Island Attorney General, Providence, RI, Gary Douglas Greenwald, Shayne & Greenwald, Columbus, OH, Frederick D. Augenstern, Massachusetts Attorney General, Boston, MA, Kimberly P. Massicotte, Judith A. Merrill, Connecticut Attorney General's Office, Hartford, CT, D. Scott Bassinson, Howard Geduldig, New Jersey Attorney General, Tenton, NY, Robert Baranowski, Ruth E. Musetto, Elizabeth Duffy, Dante Dipirro, Kevin P. Auerbacher, New Jersey Attorney General, Jean P. Reilly, Attorney General State of New Jersey, Trenton, NJ, for Plaintiff–Intervenors (99–CV–1182).

Alvin James McKenna, Porter Wright Morris & Arthur, Donald Michael Miller, American Electric Power Service Corporation, Columbus, OH, Samuel B. Boxerman, David T. Buente, Langley R. Shook, Kathryn B. Thomson, Paul A. Hemmersbaugh, Timothy K. Webster, Sidley Austin Brown & Wood, Washington, DC, Katherine L. Adams, David H.E. Becker, John C. Corbett, Sidley Austin Brown & Wood LLP, New York City, for Defendants (99–CV–1182).

### *OPINION AND ORDER*

SARGUS, District Judge.

■ These consolidated cases are before the Court pursuant to that portion of its July 16, 2002 Opinion and Order which, for the time being, denied Plaintiffs' motion to strike the Defendants' Eighteenth Affirmative Defense,[1] but permitted the parties to brief further an issue raised by that defense. *U.S. v. American Electric Power Service Corp.*, 218 F.Supp.2d 931, 940–41 (S.D.Ohio 2002). In that Order the Court interpreted the defense in question to be that Defendants had been "impermissibly and discriminatorily singled out" by the EPA to be sued in this CAA enforcement action, in violation of Defendants' due process rights under the Fifth Amendment. *Id.* at 940. Noting the initial showing required in order for a defendant to pursue a claim of selective prosecution as set forth in *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, the Court permitted further briefing for Defendants to demonstrate "the basis for their argument that they have satisfied the threshold showing outlined by *Armstrong*, that would justify discovery on the selective prosecution defense." *Id.*, 941.

The defense in question is presented as follows:

Plaintiff, in this and other related lawsuits directed at coal-fired electric power generation plants located in the Midwest and South, has impermissibly and discriminatorily singled out companies located in these regions of the United States for its CAA enforcement. activities. Such action by Plaintiff violates the Due Process Clause of the 5th Amendment to the U.S. Constitution and is arbitrary, capricious or otherwise not in accordance with law. 5 U.S.C. § 706; 42 U.S.C. § 7607(d)(9).

Doc. 99, pp. 66–67. The Court notes that, although it did not say so in the portion of its previous Opinion and Order discussing

---

1. The same defense is labeled "Eighteenth" in Defendants' Answer to the United States' Amended Complaint (Doc. 99), but is labeled "Nineteenth" in Defendants' Answer to Intervenor–Plaintiffs' Amended Complaint (Doc. 100).

this defense (218 F.Supp.2d at 940–41), it is made clear elsewhere in the opinion that the Court rejects any characterization of Plaintiff's action as a rule-making subject to notice and comment requirements of § 706 of the APA and reviewable under the standards of § 7206(d)(9) of the CAA. *Id.*, 946–48. The defense, if it has any validity at all, is that the Defendants are the victims of selective prosecution or, more accurately, selective civil enforcement in violation of their constitutional due process right to equal protection of law.[2]

▮ In analyzing whether such defense is subject to being stricken in this case, the Court begins with recognition of several related principles generally applicable in consideration of selective enforcement / equal protection questions, which principles appear particularly pertinent here. To begin with:

> There is no right under the Constitution to have a law go unenforced against you, even if you are the first person against whom it is enforced, and even if you think (or can prove) you are not as culpable as some others who have gone unpunished. The law does not need to be enforced everywhere to be legitimately enforced somewhere....

*Futernick v. Sumpter Township*, 78 F.3d 1051, 1056 (6th Cir.1996) (citing *Wayte*, 470 U.S. at 607, 105 S.Ct. 1524).

> [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation....[if] it was not stated that the selection was deliberately based upon an unjustifiable

standard such as race, religion, or other arbitrary classification.

*Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962)(as quoted in *Futernick* at 1056).

> ....Selective enforcement of a facially constitutional regulation does not, by itself, violate equal protection. "A claim of selective application of a facially lawful state regulation[3] requires a showing that selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by malicious or bad faith intent to injure the person."

*Wright v. MetroHealth Medical Center*, 58 F.3d 1130, 1137 n. 7 (6th Cir.1995) (citations omitted). Although these statements of equal protection law do not come from civil cases like this one in which selective enforcement is raised as a defense,[4] it appears to the Court the statements are at least generally applicable here as well.

On further review of its previous Order as well as review of the parties' subsequent briefing and additional relevant authority, however, the Court concludes that the above standards and those announced in *Armstrong* are not alone determinative of the issue presented here. To begin with, *Armstrong*, like much of the authority discussing selective prosecution, is a criminal case, and the requirements for establishing a defense that will permit discovery under the limited scope permitted

---

**2.** "Although the Fifth Amendment, unlike the Fourteenth, does not contain an equal protection clause, it does contain an equal protection component. '[Our] approach to Fifth Amendment equal protection claims has ... been precisely the same as to equal protection claims under the Fourteenth Amendment.'" *Wayte v. United States*, 470 U.S. 598, 608 n. 9, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985) (citations omitted).

**3.** The defense in question here does not suggest that the federal CAA provisions sought to be enforced are not facially lawful.

**4.** *Futernick* and *Wright* are 42 U.S.C. § 1983, civil rights cases in which selective enforcement is relied on by the plaintiffs in support of their claims, while *Oyler* and *Wayte* involve claims that criminal prosecution was barred in those cases.

by the Federal Rules of Criminal Procedure are not necessarily the same as those which might permit discovery in a civil proceeding under the Civil Rules.[5] Furthermore, it is not clear, at least to this Court, that selective civil enforcement *is* a defense in the strict sense of requiring dismissal or judgment for the defendant if proved. See Rule 8(c), Fed.R.Civ.P.; *Roberge v. Hannah Marine Corp.*, (unpublished) 124 F.3d 199, 1997 WL 468330 *3 (6th Cir.1997); *Cf., Armstrong* at 461 n. 2, 116 S.Ct. 1480 ("We have never determined whether dismissal of the indictment, or some other sanction, is the proper remedy if a court determines that a defendant has been the victim of prosecution on the basis of his race."); *Attorney General of the United States v. Irish People, Inc.*, 684 F.2d 928 (D.C.Cir.1982) ("We need not reach the question of to what extent the selective prosecution defense may be inappropriate in a civil suit context, though we do hold that when the interests of the parties in the suit must be balanced, the nature of the case is important." 684 F.2d at 932 n. 8).

Still, *Irish People, Inc.*, itself, is at least some precedent for imposition of pre-discovery showing requirements where selective enforcement is raised by the defense in the context of a civil enforcement case. Here, this Court has required the showing by Defendants relative to Plaintiffs' motion to strike the defense, which, if granted, presumably would remove that defense as a basis for certain further discovery.[6] Assuming without deciding that selective enforcement might be demonstrated to be a potentially viable defense under some circumstances (perhaps colorable showing of selection on the basis of race or religion or for exercising free speech rights, etc.) in some civil enforcement proceedings (possibly eviction or nuisance or the like), the Court nevertheless concludes that Defendants have not done so here.

The Court reaches this conclusion on two closely-related grounds. First, it is not at all clear that Defendants have sufficiently alleged selective civil enforcement in violation of their equal protection rights in this case. It is alleged, and Defendants continue to argue, that Plaintiff (in effect, USEPA, an administrative agency of the United States) in this and other lawsuits has "impermissibly and discriminatorily singled out coal-fired electric power" companies in the Midwest and South for its CAA enforcement activities. That may be a basis for argument against the advisability or propriety of an formally adopting such an agency enforcement policy (which might be a basis in administrative review proceedings for contesting the establishment of such a policy), but it does not plead any of the recognized elements of a selective enforcement defense in a case such as this. Nor does the basis upon which these Defendants apparently claim to have been "singled out"—being "coal-fired electric power generation plants in the Midwest and South" implicate the obviously "impermissible considerations, such as race or religion [or] to punish the exercise of constitutional rights," and there are

---

5. Compare the Court's analysis of Federal Rule of Criminal Procedure 16's application in *Armstrong* (517 U.S. at 461–63, 116 S.Ct. 1480) to the very different provisions of Rule 26 of the Federal Rules of Civil Procedure as analyzed in such cases as *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350–51, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978).

6. The Court notes that it is not here making any discovery ruling, as such, only deciding whether a specific defense shall remain in the case and continue as an arguable basis for additional discovery. *Cf., Oppenheimer Fund Inc.* at 352, 98 S.Ct. 2380 ("Thus, it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken ... unless the information is otherwise relevant to issues in the case.")

no allegations of "malicious or bad faith intent to injuro." *Wright,* 58 F.3d at 1137 n. 7.

Giving Defendants' allegations a liberal reading, the most they appear to claim is that these Defendants and others like them have been "singled out" to be sued by the USEPA and that such selection violates their equal protection rights because it was done for insufficient, or unjustifiable, or unfair, or just plain bad reasons. The Court is aware of no precedent for such an affirmative defense being pursued successfully in a civil enforcement action by a federal government agency on that basis alone, that is, without also claiming membership in a constitutionally protected class or intent to punish for exercise of constitutionally protected rights. There are cases in which individuals have been permitted to pursue due process civil rights claims on such a basis ("irrational and wholly arbitrary selection," *Village of Willowbrook v. Olech,* 528 U.S. 562, 565, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)), but those are clearly distinguishable from this case, not least because here the claim is being asserted as a defense to statutorily-authorized civil enforcement proceedings, being pursued primarily by the federal government, whom Defendants clearly could not sue for such an alleged civil rights violation. See *Lundstrum v. Lyng,* 954 F.2d 1142, 1146 (6th Cir.1991); *Shaner v. United States,* 976 F.2d 990, 994 (6th Cir.1992).

In light of *Willowbrook,* the precise holding in *Futernick* may not now represent good law in such affirmative civil rights cases, but the Sixth Circuit's reasoning in discussing the appropriate limits on permitting an arbitrary selection / equal protection claim remains very persuasive

where, as here, the attempt is to use it as a defense in a government civil enforcement proceeding.

... [W]e see compelling reasons that the sundry motivations of local regulators should *not* be policed by the Equal Protection Clause of the United States Constitution, absent the attempt to harm a protected group or punish the exercise of a protected right. The sheer number of possible cases is discouraging. Legislators often combine tough laws with limited funding for enforcement. A regulator is required to make difficult, and often completely arbitrary, decisions about who will bear the brunt of finite efforts to enforce the law. As a result, even a moderately artful complaint could paint almost any regulatory action as both selective and mean-spirited.

*Futernick,* 78 F.3d at 1058 (emphasis by the court). Federal regulators and their attempts to enforce federal laws and regulations appear no less subject to such constraints, if a selective civil enforcement defense may be based on anything less than a colorable showing of attempted harm to one of a constitutionally protected class or attempted punishment for the exercise of a constitutionally protected right.

As noted above, *Irish People, Inc.* is at least some authority that a selective enforcement defense may be raised in civil enforcement cases [7], but it is also clear from that case that a colorable showing is required to pursue the defense, even at the discovery stage. Here, the Court concludes that Defendants have not made the required showing as to either of the two necessary elements of the defense: *"both that the prosecution was improperly moti-*

7. The Court notes, however, that the defense in that case was based on a claim of selection "because of hostility to the editorial policy of defendant, and the [Irish Republican] cause it espouses," (684 F.2d at 931 (quoting that defendant's Answer)), i.e., selection based on the exercise of constitutionally protected rights.

vated *and* that it was selective in the first place." *Id.* at 932 (emphasis by the court). In view of the apparently undisputed existence of various other CAA enforcement proceedings both by the United States and by the intervenor states, Defendants have not made out a colorable case of selective enforcement here in the first place. Furthermore, if a colorable claim of such selection had been made, Defendants have also failed to make a colorable showing that Plaintiff's and Plaintiff–Intervenors' filing of this and the other CAA enforcement proceedings with whom Defendants group themselves was improperly motivated, at least in the constitutional sense required to maintain the defense. There is no apparent "classification that gives rise to an inference that the state 'intended to accomplish some forbidden aim' against that group through selective application of the laws." *Stemler v. City of Florence,* 126 F.3d 856, 874 (6th Cir.1997) (quoting *Futernick,* 78 F.3d at 1056).

The Court will therefore grant Plaintiffs' motions to strike Defendant's affirmative defense based on the claim of selective enforcement. In light of substantial attention to the subject in the arguments and memoranda of both sides, however, the Court notes again that it is not here making any specific discovery ruling, either for the present liability phase of the proceedings, or for a possible later proceedings as to remedies, in the event those should become necessary. Pending discovery questions remain for resolution on their specific facts in light of pleadings as they now exist following the subject selective enforcement defense being stricken by this Order.

Consistent with the foregoing, Plaintiff's and Plaintiff–Intervenors' motions to strike the defense labeled "Eighteenth" in Defendants' Answer to the United States' Amended Complaint (Doc. 99) and the defense labeled "Nineteenth" in Defendants'

Answer to Intervenor–Plaintiffs' Amended Complaint (Doc. 100) are GRANTED.

IT IS SO ORDERED.