**LIBERTARIAN PARTY OF OHIO, et al., Plaintiffs,**

**v.**

**Jon HUSTED, et al., Defendants.**

**Case No. 2:13–cv–953.**

United States District Court, S.D. Ohio, Eastern Division.

Filed July 14, 2014.

Mark R. Brown, Naila S. Awan, Mark George Kafantaris, Kafantaris Law Offices, Columbus, OH, Freda J. Levenson, ACLU of Ohio, James L. Hardiman, American Civil Liberties Union of Ohio Foundation, Cleveland, OH, for Plaintiffs.

Richard Nicholas Coglianese, Bridget C. Coontz, Halli Brownfield Watson, Kristopher J. Armstrong, Ohio Attorney General's Office, John Wolcott Zeiger, Daniel Perry Mead, Steven Walter Tigges, Stuart G. Parsell, Zeiger Tigges Little & Lindsmith LLP, Columbus, OH, for Defendants.

## OPINION AND ORDER

TERRENCE P. KEMP, United States Magistrate Judge.

This ballot access case, brought by the Libertarian Party of Ohio and three individuals, has recently produced a flurry of discovery-related motions. The Court will not set forth the facts extensively (they appear in the Court of Appeals' decision of May 1, 2014, see Doc. 107) but will limit its

recitation of the facts to those that relate to the precise issues presented by each motion being ruled upon. This Opinion and Order deals with Plaintiffs' motion to compel depositions (Doc. 116), the separate response filed by Secretary of State Jon Husted (Doc. 121) (which includes a motion to stay discovery and for a protective order), and Plaintiffs' reply to that response (Docs. 125). For the following reasons, the motion to compel will be granted.

### I. *A Brief Factual Background*

As the Court of Appeals' recitation of the facts shows, the current issue before the Court relates to the invalidation of certain nomination petitions circulated on behalf of Charlie Earl, the Libertarian Party's gubernatorial hopeful, and two other Libertarian Party candidates. After local boards of election verified signatures on those petitions, intervenor Gregory Felsoci filed a protest. The protest was initially referred to Bradley Smith, a law professor who was designated as a hearing officer and who conducted a hearing on the issue of whether the protest had merit. Professor Smith issued a report on March 7, 2014, recommending that certain petitions and the signatures on them be invalidated because the "employed by" information required by Ohio Rev.Code § 3501.38(E)(1) had not been included on the petitions. Secretary Husted adopted that report, resulting in the disqualification of the Libertarian Party candidates for governor, lieutenant governor, and attorney general. Of those three candidates, only Charlie Earl is involved in this case. Plaintiffs' motion for preliminary injunctive relief has been denied by this Court and affirmed on appeal.

On June 13, 2014, Plaintiffs noticed the depositions of Hearing Officer Smith and of Jack Christopher, the latter of whom is described in the notice as the "Defendant–Secretary's authorized and acknowledged agent." *See* Docs. 113 and 114. Almost immediately thereafter, Plaintiffs moved to compel the depositions. Although that is procedurally unusual, the parties agreed, during a telephone conference with the Court, that they had reached an impasse over whether the depositions would go forward as noticed, and agreed to have the issue resolved through briefing on the motion to compel. That briefing is now complete.

Professor Smith's role in the case is clear from the prior opinions, but Mr. Christopher's is not. In a letter dated June 12, 2014, which is attachment four to Doc. 116, he is described as Chief Legal Counsel to the Secretary of State. The Secretary's objection to his being deposed was based, in part, on his status as counsel for a party; however, Plaintiffs claimed to be unaware when they noticed his deposition that he was an attorney, and they proposed to depose him in his capacity as "an executive official with a central role in Mr. Earl's exclusion from the ballot." Doc. 116, attachment 8. The Secretary's opposing memorandum does not provide any more facts about Mr. Christopher's status or role in the case other than characterizing him as the Secretary's "in-house attorney . . . ." Doc. 121, at 17.

There are a number of emails relating to Mr. Christopher attached to Plaintiffs' reply (Doc. 125). They are not authenticated but the Court will accept them for purposes of this motion, especially since they do not directly affect the Court's ruling. They show that Mr. Christopher signed his emails as "General Counsel, Secretary of State Jon Husted." He sent a few emails relating to the procedures for hearing the protest and was copied on others sent by Brandi Laser Seskes, Election Counsel in the Secretary of State's office. He also wrote a responsive letter to a public records request made by Plaintiffs to the

Secretary of State's office. That letter was sent on June 24, 2014, after the date of the deposition notice. There do not appear to be any other facts relating to his role in the protest procedure.

## II. *Analysis*

### A. *General Arguments against Discovery*

The Secretary opposes having either Professor Smith or Mr. Christopher deposed for reasons specific to each of the two proposed deponents. However, he also argues that neither should be deposed because, for several reasons, it is not appropriate to go forward now with either this discovery or any discovery. The Court will address these general arguments before turning to the issues specific to each of the two witnesses.

First, the Secretary presents a lengthy argument in support of his position that until the Court rules on the pending motion for leave to amend, discovery ought not to proceed. The Opinion and Order on the Felsoci deposition (Doc. 133) addresses this argument, and for those same reasons the Court rejects it here. The Court takes Plaintiffs at their word that the discovery they seek is related to the current complaint and not to claims which have not yet been asserted and may never become part of the case.

Second, the Secretary contends that even if these two witnesses might have something to say about Plaintiffs' as-applied challenge as pleaded in Count Seven of the second amended complaint, they should not have to say it until Plaintiffs produce other credible evidence to support what the Secretary characterizes as a "selective prosecution" claim. The opposing memorandum cites to a number of cases, primarily from the criminal law area, holding that before a party (usually a criminal defendant) is entitled to conduct discovery on a selective prosecution claim, it must make a threshold showing of the validity of that claim using evidence obtained other than through discovery. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996); *United States v. American Elec. Power Service Corp.*, 258 F.Supp.2d 804 (S.D.Ohio 2003).

The primary defect in this argument is that Plaintiffs are not pursuing a defense in either a criminal or civil enforcement case (like *American Electric Power, supra*) of selective prosecution. Rather, as they point out in their reply, this is an election law case where the Plaintiffs make an affirmative claim that a statute is unconstitutional as applied. The Secretary has not cited any cases holding that, in the context of such a challenge, the standards for discovery set forth in Rule 26 do not apply, and the Court is aware of no such authority. Consequently, it need not decide if, as Plaintiffs argue in the alternative, the evidence that this statute has never before been applied either to independent contractors generally, or to this particular independent contractor, is enough to satisfy whatever threshold showing must be made before discovery can take place. Since there are no reasons here to impose a blanket prohibition on, or a stay of, discovery, the Court now turns to the issues specific to each proposed witness.

### B. *Hearing Officer Smith*

Defendants argue that two privileges prohibit the deposition of Hearing Officer Smith: the deliberative process privilege and the judicial mental process privilege. For the following reasons, the Court concludes that neither of these privileges erects an absolute bar against taking this deposition.

#### 1. *The Deliberative Process Privilege*

The United States Supreme Court has recognized a deliberative process privilege

covering "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8–9, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (*quoting NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)) (internal quotation marks omitted). Plaintiffs do not dispute the existence of this privilege, but argue that "the deliberative process privilege has no application when the process itself is questioned, and more importantly it has no application when the plaintiffs claim governmental misconduct." Motion to Compel, Doc. 116, at 8. Accordingly, the Court turns to the question of whether the deliberative process privilege can be overcome here at least to the extent that a deposition can be convened.

■ Many courts have held that the deliberative process privilege is a qualified privilege. *See, e.g., In re Sealed Case,* 121 F.3d 729, 737 (D.C.Cir.1997); *Marriott Int'l Resorts, L.P. v. United States,* 437 F.3d 1302, 1307 (Fed.Cir.2006); *F.T.C. v. Warner Commc'ns Inc.,* 742 F.2d 1156, 1161 (9th Cir.1984); *E.E.O.C. v. Burlington N.,* 615 F.Supp.2d 717, 720 (W.D.Tenn. 2009), *objections overruled sub nom. E.E.O.C. v. Burlington N. & Santa Fe Ry. Co.,* 621 F.Supp.2d 603 (W.D.Tenn.2009). There are several factors to consider in determining whether the deliberative process privilege should be overcome, including (1) the relevance of the evidence sought, (2) the availability of other evidence, (3) the role of the government in the litigation, and (4) the potential consequences of disclosure of the information. *See, e.g., F.T.C. v. Warner Commc'ns Inc., supra* at 1161 (9th Cir.1984) ("Among the factors to be considered in making this determination are: 1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions") (citations omitted); *see also E.E.O.C. v. Burlington N., supra* at 720–21 ("In balancing these competing interests, the court should consider several factors, including (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable") (citations omitted); *see also United States v. Farley,* 11 F.3d 1385, 1389 (7th Cir.1993) (deliberative process privilege can be overcome if the party requesting the documents can make "a showing that his need for the documents outweighed the government's interest in not disclosing them" (citation omitted)).

■ Plaintiffs are correct that possible government misconduct or deficiencies in the deliberative process are factored into any analysis and, where present, weigh in favor of denying the privilege. "[W]here there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'" *In re Sealed Case,* 121 F.3d 729, 738 (D.C.Cir.1997) (*quoting Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,* 60 F.3d 867, 885 (1st Cir.1995) (additional citations omitted)); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.,* 903 F.Supp.2d 59, 66 (D.D.C.2012) (*quoting In re Sealed Case,* 121 F.3d at 738); *see also Bank of Dearborn v. Saxon,*

244 F.Supp. 394, 401–03 (E.D.Mich.1965) ("the real public interest under such circumstances is not the agency's interest in its administration but the citizen's interest in due process"), *aff'd* 377 F.2d 496 (6th Cir.1967). However, a showing of misconduct is not required in order for the privilege to be overcome.

█ Given that the privilege is not absolute and that discovery might reveal reasons why it should not be applied, it is fairly standard practice to permit a person who may be able to claim this privilege to be deposed, and to require that the claim of privilege be made in response to specific questions. *See, e.g., United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974) (holding that assertions of privilege must normally be raised "as to each record sought and each question asked so that … the court can rule with specificity"); *E.E.O.C. v. Kaplan Higher Educ. Corp.*, 2011 WL 2115878, *3 (N.D.Ohio May 27, 2011) (holding, in reliance on *Hodgson*, that it would be premature to rule on assertions of privilege prior to a deposition). That way, if disputes arise as to whether the privilege was properly asserted, the Court can consider the matter in context, apply the factors listed above, and determine whether the privilege was properly invoked. While that may prove to be a somewhat cumbersome process, Plaintiffs should be permitted to make their record about various matters which, they assert, would allow them to overcome or test the assertion of the privilege, and a deposition appears to be the only way they can do so.

### 2. *The Judicial Mental Processes Privilege*

The Supreme Court also recognizes a strong but not absolute bar to discovery about the mental processes of certain decisionmakers in administrative agencies as long as they are performing quasi-judicial functions. In *United States v. Morgan*, 313 U.S. 409, 421–22, 61 S.Ct. 999, 85 L.Ed. 1429 (1941), the Court determined that the district court erred in authorizing the deposition of the Secretary of Agriculture at which he was questioned at length about the process by which he reached his decision in the matter at issue. Courts have construed *Morgan* to protect "mental processes of those engaged in investigative or decisional functions." *General Engineering, Inc. v. N.L.R.B.*, 341 F.2d 367, 375 (9th Cir.1965); *see also Drukker Communications, Inc. v. N.L.R.B.*, 700 F.2d 727, 731 (D.C.Cir.1983). However, the Court has also stated that the mental processes protection does not act as an absolute bar to deposing decisionmakers in an administrative proceeding. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In *Citizens to Preserve Overton Park*, the Supreme Court held that "[a] court may require the administrative officials who participated in the decision to give testimony explaining their action," but it qualified that holding by stating that:

> [o]f course, such inquiry into the mental processes of administrative decisionmakers is usually to be avoided. *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). And where there are administrative findings that were made at the same time as the decision, as was the case in *Morgan*, there must be a strong showing of bad faith or improper behavior before such inquiry may be made.

*Citizens to Preserve Overton Park*, 401 U.S. at 420, 91 S.Ct. 814. In a subsequent decision, the Court said that it

ha[d] recognized, ever since *Fletcher v. Peck,* 6 Cranch 87, 130–131, 3 L.Ed. 162 (1810), that judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government. Placing a decisionmaker on the stand is therefore "usually to be avoided." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971).

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 268, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

Decisions in this Circuit have not added much clarity to the exact contours of the protection. The Court of Appeals recognizes that judicial mental processes are protected. *Perkins v. LeCureux,* 58 F.3d 214, 221 (6th Cir.1995). It has also applied the mental processes protection to non-judicial officials. *Warren Bank v. Camp,* 396 F.2d 52, 56–57 (6th Cir.1968). In *Warren Bank,* the Court of Appeals, citing *Morgan,* held that the appellant was not entitled to take the depositions of the Comptroller of Currency in order to "probe his mind as to exactly why he saw fit to exercise his discretion as he did in relation to the grant of this charter" where the appellant had failed to show "a prima facie case of misconduct." *Id.* at 56 (citations and internal quotations omitted). And this Court has permitted defendants to assert the judicial mental processes privilege during the course of a deposition in order to prevent a Mayor Court's Magistrate from answering questions about the thought process underlying his decisions. *Drake v. Village of Johnstown,* 2011 WL 4091846 (S.D.Ohio Sept. 14, 2011). Courts from other circuits are generally in accord with this approach.

*See, e.g., Magnivision, Inc. v. Bonneau Co.,* 115 F.3d 956, 960 (Fed.Cir.1997) ("Absent proof of inequitable conduct ... the patent examiner's thought processes are shielded from discovery as to their 'bases, reasons, mental processes, analyses or conclusions.'" (citation omitted)); *Franklin Sav. Ass'n v. Ryan,* 922 F.2d 209, 211 (4th Cir.1991) ("Since *Morgan,* federal courts have consistently held that, absent 'extraordinary circumstances,' a government decision-maker will not be compelled to testify about his mental processes in reaching a decision, 'including the manner and extent of his study of the record and his consultations with subordinates.'" (citations omitted)); *Bank of Commerce of Laredo v. City Nat. Bank of Laredo,* 484 F.2d 284, 288 (5th Cir.1973) ("When findings of fact, rendered contemporaneously with the concomitant administrative decision, are subsequently available, a reviewing court may not require the agency officials who participated in that decision to give testimony explaining their action unless there has been a strong showing of bad faith or improper behavior," *citing Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. at 420, 91 S.Ct. 814).

■ The parties' briefing on this issue relies heavily on Ohio law. However, pursuant to Federal Rule of Evidence 501, unless provided otherwise by the United States Constitution, federal statute, or rules proscribed by the Supreme Court, "when dealing with a federal question ... privilege 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience.'" *Hancock v. Dodson,* 958 F.2d 1367, 1372–73 (6th Cir.1992) (quoting F.R.E. 501). Nevertheless, the Supreme Court has indicated "that the privilege law as developed in the states is [not] irrelevant." *In re Zuniga,* 714 F.2d 632, 639 (6th Cir.1983) (*citing United States v. Gillock,* 445 U.S. 360, 369 n. 8, 100 S.Ct. 1185, 63 L.Ed.2d 454 (1980)). Thus, the Court may "resort

to state law analogies for the development of a federal common law of privileges in instances where the federal rule is unsettled." *Wm. T. Thompson Co. v. Gen. Nutrition Corp., Inc.*, 671 F.2d 100, -104 (3d Cir.1982) (citation omitted); *see also Mem'l Hosp. for McHenry Cnty. v. Shadur*, 664 F.2d 1058, 1061 (7th Cir.1981) ("'A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" (citations omitted)). With this background in mind, the Court will conduct a brief review of Ohio law as it relates to the mental process privilege and, in particular, if it applies to a hearing officer in a ballot protest matter.

The Supreme Court of Ohio has also recognized a judicial mental processes privilege. In *TBC Westlake, Inc. v. Hamilton County Board of Revision*, 81 Ohio St.3d 58, 64, 689 N.E.2d 32 (1998), the court cited to *Morgan* and also to Ohio cases and "conclude[d] that the judicial mental process privilege, a common-law privilege, is state law." There, it prohibited disclosure of a report generated as a part of a quasi-judicial proceeding. In describing the privilege, the Ohio Supreme court approvingly quoted language stating that the privilege applied to an "administrative officer, [who was] sitting in a quasi-judicial capacity and required to reach a conclusion based on evidence presented to him." *Id.* (citation and internal quotation marks omitted).

The parties cite to a number of other state court decisions discussing what constitutes a quasi-judicial proceeding for different purposes. Those cases list factors such as whether the decisionmaker exercises discretion to settle a dispute and whether the law setting forth the proceeding mandates notice, a hearing, and the opportunity for the introduction of evidence. *See TBC Westlake, Inc.*, 81 Ohio St.3d at 62, 689 N.E.2d 32 (applying the privilege to the Board of Tax Appeals); *Garrett v. City of Columbus*, 2010 WL 3292958, *3 (Franklin Co.App. Aug. 19, 2010) (observing that "[a] proceeding does not qualify as quasi-judicial unless the law mandates that the proceeding include notice, a hearing, and the opportunity for the introduction of evidence"); *State ex rel. Eaton v. Erie Cty. Bd. of Elections*, 2006 WL 513910, *6 (Erie Co.App. Feb. 28, 2006) (for purposes of determining whether Ohio's "Sunshine Law" applied, a hearing is a quasi-judicial proceeding if it requires the decisionmaker to weigh the evidence and exercise discretion). Of these cases, however, the only one that addresses the privilege at issue is *TBC Westlake, Inc.*, and its discussion of whether a proceeding is quasi-judicial also arguably relates to Ohio's "Sunshine Law." Accordingly, even if Ohio law were deemed controlling, the factors identified in these cases are not dispositive of the question of how the mental process privilege is to be applied in the context of a discovery dispute.

█ In their reply brief, Plaintiffs suggest that the Ohio courts have implied a requirement that proceedings be appealable to Ohio's Courts of Common Pleas in order to be quasi-judicial for purposes of the judicial mental processes privilege. They claim that because the Ohio Constitution provides that "courts of common pleas may only review administrative decisions resulting from quasi-judicial proceedings," *Garrett, supra*, only those administrative decisions which are appealable to courts of common pleas result from quasi-judicial proceedings. However, that is a false syllogism. The limitation of the Ohio courts' jurisdiction to certain types of quasi-judicial proceedings does not necessarily

mean that the Ohio legislature either must provide, or has provided, for an appeal from every quasi-judicial administrative proceeding.

■ Although there is only limited guidance as to what constitutes a quasi-judicial administrative proceeding, the Court concludes that both federal and Ohio law would extend the judicial mental processes protection to Hearing Officer Smith's decisionmaking process at issue in this case. As set forth in the Court of Appeals' recitation of the facts, Hearing Officer Smith conducted a hearing at which he received testimony, and he issued a written report and recommendation. (Doc. 107 at 8–9). He did so pursuant to § 3513.05 of the Ohio Revised Code, which requires notice and a hearing, and provides that at the hearing, the election officials at the hearing "shall hear the protest and determine the validity or invalidity of the declaration of candidacy and petition." All of these facts suggest that the proceeding would be considered quasi-judicial for different purposes under Ohio law. Furthermore, the proceeding at issue appears to be similar in character to the proceedings in which the judicial mental processes privilege has been applied.

Plaintiffs, attempting to avoid this conclusion, argue first that the Ohio Secretary of State is an executive officer rather than a judicial or quasi-judicial officer. (Doc. 116 at 11). In support of that argument, Plaintiffs cite *Maloney v. Rhodes,* 45 Ohio St.2d 319, 345 N.E.2d 407 (1976), a decision interpreting Section 16, Article II of the Ohio Constitution, which contains the process by which bills are approved by the Governor and filed with the Secretary of State. There, the Court determined that the Secretary's role in filing bills that become laws was ministerial and not discretionary. *Id.* at 322, 345 N.E.2d 407. While the *Maloney* court generally dis-

cusses the executive nature of the Secretary's position and his lack of authority to declare a law constitutionally invalid, it does not address whether he has authority to make administrative decisions that are of a quasi-judicial character. Nor does it appear that the fact that an executive or administrative official has some ministerial duties has precluded other courts from applying the judicial mental processes privilege when that official acts in a quasi-judicial capacity.

Next, Plaintiffs argue that the proceeding at issue was not quasi-judicial because, in a case decided by Judge Sargus involving the same type of process (i.e. a decision by the Secretary of State affirming a hearing officer's decision upholding a nominating petition protest), this Court did not abstain from proceeding under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Blankenship v. Blackwell,* 341 F.Supp.2d 911, 919 (S.D.Ohio 2004). Plaintiffs argue that *Younger* requires abstention in any case where a party seeks to enjoin a quasi-judicial state administrative action, and because this Court did not abstain in *Blankenship,* Judge Sargus necessarily held that the Secretary's decision was not quasi-judicial.

Without parsing Plaintiffs' summary of the *Younger* doctrine or characterization of the *Blankenship* holding, the Court is not persuaded that the test for whether the court must abstain under *Younger* is identical to the test for whether an administrative action is quasi-judicial for purpose of applying the judicial mental processes privilege. Given some of the different rationales for applying the *Younger* doctrine and the judicial mental processes privilege, it is reasonable to assume that the two analyses will not draw the same lines as to what agency proceedings are protected. *Compare New Orleans Pub. Serv., Inc. v.*

*Council of City of New Orleans,* 491 U.S. 350, 364, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989) (*Younger* doctrine is based primarily on considerations of comity, including "a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways" (citation and internal quotation marks omitted)) *with TBC Westlake, Inc.,* 81 Ohio St.3d at 63, 689 N.E.2d 32 (permitting inquiry into judicial mental processes "would intrude upon a judge's subjective thoughts and deliberations, threatening the orderly administration of justice"). Furthermore, *Blankenship* does not discuss what constitutes a quasi-judicial administrative proceeding; the *Younger* argument made in that case related to a pending state court mandamus action. For those reasons, the Court finds that Plaintiff's reliance on *Blankenship* is misplaced.

Plaintiffs also argue that electoral decisions are specifically relegated to the political branch of government rather than the judicial branch. The cases they cite do not address the issue before the Court here and do not shed light on this issue, however. *See Thompson v. Redington,* 92 Ohio St. 101, 109, 110 N.E. 652 (1915) (addressing separation of powers question regarding whether the General Assembly had the authority to confer jurisdiction upon the Courts of Appeals to hear and determine election contests); *Stanton v. State Tax Commission,* 114 Ohio St. 658, 151 N.E. 760 (Ohio 1926) (also addressing separation of powers question).

Plaintiffs turn next to case law considering absolute judicial immunity from liability and argue that those cases require that decisionmakers be truly independent in or-

der to be entitled to immunity. Plaintiffs further argue that this same requirement should be adopted in the context of judicial mental processes privilege. Plaintiffs have not pointed to any case law indicating that other courts have adopted this part of the judicial immunity test in the context of applying the judicial mental processes privilege. On the other hand, in *Drake v. Village of Johnstown,* 2011 WL 4091846 (S.D.Ohio Sept. 14, 2011) this Court assumed that a Mayor's Court Magistrate's actions were colorably judicial notwithstanding his testimony that he did not view himself as a neutral but rather saw himself as aligned with the Village's tax collection efforts. At any rate, Plaintiffs state that they do not have any reason to believe that Hearing Officer Smith was not independent. (Doc. 116 at 15–16).

Plaintiffs also argue that this proceeding was not quasi-judicial because the Secretary has the authority to investigate and to reject petitions for noncompliance even in the absence of a valid protest. (Doc. 116 at 17). While the Secretary may have that authority, that is not how he proceeded in this case.

Lastly, Plaintiffs do not attempt to overcome the privilege by making a prima facie case of misconduct by Hearing Officer Smith or by alleging bad faith or misbehavior. (Doc. 116 at 15–16). Consequently, the Court concludes that, on the basis of this record, the judicial mental process privilege applies.

■ Having so concluded, however, the Court also notes that the claims in this case involve issues beyond the substance of the Hearing Officer's decision. Plaintiffs have not said that they intend to depose him exclusively on the subject of how he reached his decision. Consequently, although it seems clear that he would not have to answer those types of questions, for the same reason that the Court

has found that the deliberative process privilege does not entirely preclude the deposition, it finds neither does the judicial mental processes privilege. Rather, the Court will permit the deposition to proceed subject to this ruling. At the deposition, should Hearing Officer Smith be asked questions which intrude into his mental processes, the Secretary may be entitled to invoke the judicial mental processes privilege and direct him not to answer such questions. In light of this ruling, Plaintiffs may reconsider their intent to depose him unless they have process-related questions to ask, or unless they wish to preserve the record with respect to the application of the judicial mental process privilege by making clear, at a deposition, what questions they want to have answered about the decision-making process. But they are entitled to make that record, and a deposition seems the best way to permit them to do so.

### C. *Mr. Christopher*

 As the Court noted in its separate Opinion and Order relating to the motion to compel Mr. Felsoci's deposition, the general rule is that "[u]nder the liberal discovery principles of the Federal Rules" a party is "required to carry a heavy burden" to show why a properly-noticed deposition should not go forward. *See Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir.1975). One of the ways that a party can meet this burden is to show that the proposed deponent falls into a category of witnesses, like heads of agencies, CEOs of large corporations, or the opposing party's attorney, who are easy targets for harassment, and for whom the burden of showing the appropriateness of the deposition may shift to the requesting party. *See, e.g., Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir.1979); *see also Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.1987). The Secretary contends

that Mr. Christopher is his attorney and, as such, Plaintiffs must make a particularized showing of need in order to be permitted to depose him. The Secretary relies heavily on *Gruenbaum v. Werner Enterprises, Inc.*, 270 F.R.D. 298, 309–10 (S.D.Ohio 2010) in support of this argument.

*Gruenbaum,* a case arising out of a fatal automobile accident, involved these facts. Plaintiff sought to depose the in-house counsel of the trucking company defendant, about the company's investigation of serious accidents and its efforts to prevent them from occurring. However, the Court denied a motion to compel the deposition, applying the traditional three-part test developed in *Shelton v. American Motors,* 805 F.2d 1323, 1327 (8th Cir.1986), and concluding that the plaintiff had not demonstrated that the attorney would have any non-privileged testimony to offer, that his testimony would add anything to testimony on the same subject provided by witnesses who had already been deposed, and, perhaps most significantly for purposes of this case, the he "was involved prior to litigation and helped develop litigation strategy . . . ." *Gruenbaum,* at 310. It does not appear that in *Gruenbaum* there was any disagreement about whether the *Shelton* test, which was created in the context of a request to depose an in-house attorney who had been designated by her employer, American Motors, to supervise the litigation at issue, should apply. The Secretary's argument appears to assume that *Shelton* applies to every request to depose an attorney who works "in-house" for a party to litigation without regard to that attorney's role in the litigation itself.

 The issue is not quite that simple. As this Court explained in *Williams v. Wellston City Sch. Dist.*, 2010 WL

4513818 (S.D.Ohio Nov. 2, 2010), the primary rationale behind *Shelton's* imposition of a burden on a requesting party to show why it is entitled to take a deposition—a reversal of the usual procedure which places the burden of persuasion on the party seeking protection—is to protect against the discovery of trial or litigation strategy. Consequently,

> [w]hen the attorney whose deposition is requested is not litigation counsel, is not in-house counsel who is involved to some extent in directing litigation, or is not an attorney who has advised the client concerning the same or similar litigation or has helped develop its defense strategy, the reasons for applying *Shelton* are much less compelling because there is little or no risk that the attorney's testimony might reveal any litigation strategy, or that the purpose of the deposition is to drive a wedge between the opposing party and its current counsel.

*Id.* at *5. *See also Ellipsis, Inc. v. Color Works, Inc.,* 227 F.R.D. 496, 497 (W.D.Tenn.2005) ("the *Shelton* test should be limited to those instances where the attorney to be deposed is either trial/litigation counsel or the subject matter of the deposition may elicit litigation strategy"); *Chesemore v. Alliance Holdings, Inc.,* 2011 WL 4458782 (N.D.Ohio Sept. 23 2011) (declining to apply *Shelton* to proposed deposition of opposing counsel to the extent that the questioning related to their prior role as transactional counsel and not their current role as litigation counsel). Of course, it also makes sense that the burden of producing evidence to show what role counsel actually plays in a case—assuming that the answer to this question is not obvious, as it would be for outside litigation counsel and perhaps for in-house counsel who have entered an appearance in the case—should be on the party asserting that *Shelton* applies, since that party is

in the best position to know exactly what counsel's role was or is.

Here, as noted, beyond identifying Mr. Christopher as General Counsel to the Secretary of State, the Secretary has presented no evidence suggesting that Mr. Christopher has been actively involved in this case, either as a supervising attorney for the litigation or as someone who has been involved in formulation of litigation or trial strategy. Further, Plaintiffs have not expressed any intent to question him about those matters, but rather to depose him on his role in the process through which the protest was adjudicated. Given the current factual record, there is no basis for applying *Shelton* (or *Gruenbaum* ), and the question then becomes whether the Secretary has advanced other persuasive reasons in support of his refusal to permit Mr. Christopher to be deposed.

The Secretary makes a brief argument, which is really part of his analysis of the *Shelton* factors, that "Plaintiffs have not demonstrated that Mr. Christopher's deposition testimony is relevant." *See* Doc. 121, at 17. Commendably, the Secretary does not present this as a stand-alone argument, and has not provided any evidence in support of the claim that Mr. Christopher's testimony would not be relevant; rather, the Secretary, relying on *Shelton,* contends the burden is on Plaintiffs to show the opposite. Of course, even had the Secretary made an argument about relevance, he would have faced a very heavy burden of showing that Mr. Christopher could not be asked a single relevant question. *See, e.g. Naftchi v. New York University Medical Center,* 172 F.R.D. 130, 132 (S.D.N.Y.1997).

One final point is in order concerning Mr. Christopher. As an attorney, he may well possess privileged information, and it is possible that Plaintiffs' questioning of him may stray into areas where the attor-

ney-client privilege would apply. Nothing in this order should be read either as suggesting that he can be questioned without due regard to the attorney-client privilege or that he may not properly invoke that privilege if a question calls for the disclosure of privileged information. The order goes no further than permitting Plaintiffs to convene a deposition; all of the other rules relating to discovery and depositions still apply.

### III. *Conclusion and Order*

Reduced to its essence, Plaintiffs' motion to compel the depositions of Bradley Smith and Jack Christopher (Doc. 116) is granted. The Secretary's motion for a stay of discovery and for a protective order, contained in Doc. 121, is denied. Further, given the need for all decisions in this case to be expedited, the Court will shorten the time for seeking reconsideration of this order to five days and will shorten the other related deadlines accordingly.

### IV. *Motion for Reconsideration*

Any party may, within five days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. § 636(b)(1)(A), Rule 72(a), Fed.R.Civ.P.; Eastern Division Order No. 14–01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due five days after objections are filed and replies by the objecting party are due three days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Mag-

istrate Judge or District Judge. S.D. Ohio L.R. 72.3.